UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AVONNIA D. McCOVERY, on behalf of E.R.,

                            Plaintiff,

            -vs-                                    04-CV-00658C(SR)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

        Plaintiff Avonnia D. McCovery initiated this action pursuant to the Social Security Act

("the Act"), 42 U.S.C. § 405(g), to review the final determination of the Commissioner of

Social Security ("Commissioner") denying plaintiff's application for Supplemental Security

Income ("SSI") benefits made on behalf of her minor child, E.R.  The Commissioner moves

for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  For the following reasons, the Commissioner's motion is granted.

## BACKGROUND

        Plaintiff filed an application with the Social Security Administration ("SSA") for SSI

benefits on behalf of E.R. on February 25, 2002 (Tr. 46-48).[1]  E.R. was born on February 3,

1999, and was three years old at the time the application for SSI benefits was filed.  After

denial of the application at the initial level (Tr. 20-24), plaintiff requested a hearing before

an Administrative Law Judge ("ALJ") (Tr. 25-27).  A hearing was held on March 11, 2004,

before ALJ William R. Pietz, at which plaintiff and E.R. testified (Tr. 257-78).  Plaintiff was

---

[1]Page citations are to the administrative transcript filed by the Commissioner as part of the answer
in this action (Item 4).

not represented by counsel at the hearing, or at any time during the agency's consideration of her application.

In a decision dated April 15, 2004, ALJ Pietz found that E.R. was not disabled within the meaning of the Act (Tr. 9-19). The ALJ's determination became the final decision of the Commissioner on June 12, 2004, when the Appeals Council denied plaintiff's request for review (Tr. 4-6).

Plaintiff filed this action on August 12, 2004, seeking review of the Commissioner's decision (Item 1). The Commissioner answered the complaint, and subsequently moved for judgment on the pleadings (Item 5). This court assigned attorney Mark C. Laudisio, Esq., to represent plaintiff in this action (*see* Item 8), and Mr. Laudisio submitted a memorandum of law (Item 14) on plaintiff's behalf in opposition to the Commissioner's motion.

For the reasons that follow, the Commissioner's motion for judgment on the pleadings is granted, and the complaint is dismissed.

## DISCUSSION

### I.   Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v.*

*Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994).   Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.   The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.   *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence.  *Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (district court may set aside Commissioner's determination that claimant is not disabled only if factual findings are not supported by substantial evidence or if decision is based on legal error).

In this case, plaintiff does not argue that the Commissioner misapplied the legal standards for evaluating childhood SSI benefits claims.  Rather, plaintiff contends that the

Commissioner's determination is not supported by substantial evidence, and that review of the record as a whole under the appropriate legal standards (outlined below) clearly shows that E.R.'s medical impairments are sufficiently severe to be disabling within the meaning of the Act.

## II.    Standards for Determining Eligibility for Childhood SSI Benefits

The SSI program, 42 U.S.C. § 1381, *et seq.*, is a federal program providing benefits to needy aged, blind, or disabled individuals who meet statutory income and resource limitations.  With respect to claims filed on behalf of children, the Act provides:

> (i) An individual under the age of 18 shall be considered disabled for the purpose of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

> (ii) Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity. . . may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C).

The Social Security regulations set forth a three-step sequential analysis for the ALJ to follow when determining whether a child is disabled within the meaning of this provision. *See* 20 C.F.R. § 416.924(a)-(d).  The first step is to determine whether the child is engaging in "substantial gainful activity."  20 C.F.R. § 416.924(b).  If he is not, the ALJ considers at step two whether the child has a "medically determinable impairment(s) that is severe," *i.e.*, causes "more than minimal functional limitations." 20 C.F.R. § 416.924(c). Finally, at step three, if the ALJ finds a severe impairment, he then must consider whether the child has an impairment that "meets," "medically equals," or "functionally equals" a

disability listed in the Listing of Impairments, found at 20 C.F.R. pt. 404, Subpt. P, App. 1 (the "Listings").  20 C.F.R. § 416.924(d); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004); *White ex rel. Johnson v. Barnhart*, 409 F. Supp. 2d 205, 207 (W.D.N.Y. 2006).

In this case, ALJ Pietz followed this three-step analysis, first finding that E.R. "has never engaged in substantial gainful activity" (Tr. 13).  Next, the ALJ determined that E.R. "has speech and language delays and a learning disorder, which are 'severe' within the meaning of 20 CFR. § 416.924(c) . . . because the child has more than slight abnormalities and more than minimal functional limitations" (*id.*).  Upon review of "all the evidence of record, including the medical records and other evidence" (*id.*), the ALJ found that E.R.'s impairments did not meet or medically equal a listed impairment (Tr. 15).  Accordingly, the ALJ proceeded to consider whether E.R.'s impairments "functionally equal" any listed impairment, following the detailed process set forth in the regulations at 20 C.F.R. § 416.926a (Tr. 16-18).

In this regard, the regulations provide that when making a determination of functional equivalence in childhood disability cases, the ALJ must examine the evidence of record and consider the child's level of functioning in the following six "domains:"

i.      Acquiring and using information;

ii      Attending and completing tasks;

iii.    Interacting and relating with others;

iv.     Moving about and manipulating objects;

v.      Caring for oneself; and,

vi.     Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).  If the child has "marked"[2] limitations in two of the domains or an "extreme"[3] limitation in one domain, then his impairments will "functionally equal" the Listings, and he will be found disabled.  20 C.F.R. § 416.926a(d); *see also White*, 409 F. Supp. 2d at 207-08.

In this case, ALJ Pietz found that E.R. has no limitations in the domains of moving about and manipulating objects, and health and physical well-being; and that E.R.'s limitations are less than "marked" in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself (Tr. 17-18).  Plaintiff contends that there is substantial evidence in the record to support a finding that E.R. has "marked" limitations in the domains of attending and completing tasks, interacting and relating with others, and acquiring and using information.

---

[2]20 C.F.R. § 416.926a(e)(2)(i) provides:

We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities.  "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

[3]20 C.F.R. § 416.926a(e)(3)(i) provides:

We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities.  "Extreme" limitation also means a limitation that is "more than marked."  "Extreme" limitation is the rating we give to the worst limitations.  However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

However, as the cases decided within the Second Circuit have made clear, "[i]t is not the district court's 'function to determine *de novo* whether [a claimant] is disabled.'" *Molina v. Barnhart*, 2005 WL 2035959, at *5 (S.D.N.Y. August 17, 2005) (quoting *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)).  It is the function of "the agency, and not [the district court], to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998).  This court's role "is not to decide the facts anew, nor to reevaluate the facts, nor to substitute its judgment for that of the ALJ, Appeals Council, or Commissioner.  Rather, the decision of the Commissioner must be affirmed if it is based upon substantial evidence, even if the evidence would also support a decision for the claimant."  *McKiver v. Barnhart*, 2005 WL 2297383, at *10 (D.Conn. September 16, 2005) (citing *Dobson v. Chater*, 927 F. Supp. 1265, 1270 (D.Neb. 1996)).

Accordingly, the question for the court in this case, as framed by the parties in their submissions in connection with the Commissioner's motion for judgment on the pleadings, is whether the record as a whole yields such evidence as would allow a reasonable mind to accept ALJ Pietz's conclusions that E.R. has less than marked limitations in the domains of attending and completing tasks, interacting and relating with others, and acquiring and using information.

## A.    Attending and Completing Tasks

The domain of attending and completing tasks considers how well the child is able to focus and maintain attention and begin, carry through, and finish activities, including the pace at which the activities are performed and the ease with which the child changes them. 20 C.F.R. § 416.926a(h).  ALJ Pietz found that "[w]hile [E.R.] definitely has an impairment

in this domain, there is no diagnosis of attention deficit hyperactivity disorder and [E.R.] does not take any medications.  At the hearing, he fidgeted a lot but remained in his chair" (Tr. 17).

In his discussion of the evidence in the record, ALJ Pietz noted that E.R. demonstrated "adequate attention" during an occupational therapy evaluation at age 28 months, and  followed directions (Tr. 14, 139).  At age three, E.R. was seen by Dr. Samuel Balderman for a consultative pediatric examination, and Dr. Balderman reported that E.R. had a normal attention span for his age (Tr. 152).  At the same age, E.R. underwent an "intellectual examination" by Dr. Thomas Dickinson, a psychologist, who observed only a "mild" impairment in attention and concentration (Tr. 157).  Dr. Dickinson also noted that E.R. was "relaxed" during the evaluation "and could follow instructions with some mild repetition due to his attention troubles" (*id.*).  Dr. Paulette Harar, a consultative pediatrician, completed a "Childhood Disability Evaluation Form" indicating that E.R. had no limitation in this domain at age three (Tr. 164).

The ALJ also reviewed records from the Gateway-Longview Therapeutic Preschool, where E.R. was placed in September 2003, at age four, in a 6:1:1 classroom setting in accordance with the Individualized Educational Program ("IEP") developed by the Buffalo Schools (*see* Tr. 252).   In January 2004, E.R. was given a complete psychological evaluation, including IQ testing, which revealed a Verbal IQ of 83, Performance IQ of 82, and a Full-Scale IQ of 81 (Tr. 253).  As noted by the ALJ, this placed E.R. in the low-average range of intellectual functioning, but was a significant improvement from the testing reported by Dr. Dickinson in 2002 (Verbal=68, Performance=69, Full-Range=66)

(Tr. 14, 15).  The evaluation report also indicates a "moderate increase in his ability to attend to tasks" since his enrollment at Gateway-Longview (Tr. 253).

E.R.'s teacher at Gateway-Longview indicated that, at age five,  E.R. had "a short attention span, is self-directed, and can be highly impulsive," but could successfully focus his attention on tasks and activities with "a high degree of structure and consistency in a small structured environment . . . ." (Tr. 173).

These records provide adequate support for ALJ Pietz's conclusion that E.R. demonstrated a "less than marked" limitation in the domain of attending and completing tasks–*i.e.*, a limitation that does not "interfere seriously with [his] ability to independently initiate, sustain, or complete activities."   20 C.F.R. § 416.926a(e)(2)(i).   As argued by plaintiff, and as ALJ Pietz pointed out in his determination, the evidence in the record shows that E.R. "definitely has an impairment in this domain . . . ." (Tr. 17 ).  "The Court's inquiry, however, is not whether [the claimant] had some limitation, but rather whether there is evidence to support the ALJ's finding that the degree of this limitation was less than marked."  *Morgan v. Barnhart*, 2005 WL 925594, at *13 (S.D.N.Y. April 21, 2005).

Accordingly, this court will not disturb the ALJ's finding that E.R. suffers a less than marked limitation in the domain of attending and completing tasks.  *Cf. Richardson v. Barnhart*, 338 F. Supp. 2d 749, 756, 757-58 (S.D.Tex. 2004) (less than marked limitation in attending and completing tasks despite diagnosis of ADHD and special education in select classes); *Duran v. Barnhart*, 2003 WL 103003, at *11 (S.D.N.Y. January 13, 2003) (less than marked limitation in attending and completing tasks despite special education and need for "constant reminders to stay focused").

## B.    Interacting and Relating with Others

The regulations define the area of interacting and relating with others as the child's ability to "initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticisms, and respect and take care of the possessions of others."   20 C.F.R. § 416.926a(i).  ALJ Pietz found the assessment of the degree of E.R.'s limitations in this domain to pose "a difficult question" (Tr. 17).

The ALJ observed that E.R. had no diagnosis of illness, had not been prescribed medication or hospitalized for a mental impairment, and received no out-of-school counseling (Tr. 17). The ALJ referred to Dr. Balderman's assessment of normal behavior at age three (Tr. 17, 152).  While Dr. Dickinson noted that E.R. "would have trouble interacting with either peers or adults at age-appropriate levels" (Tr. 159), he also noted that E.R. "has some friends, but mostly plays with his cousins" (Tr. 158).   In her assessment of E.R.'s functional equivalence at age three, Dr. Harar found a less than marked limitation in this domain based on a finding of intelligibility at 60 to 70 percent with good imitation of final consonants, and the use of three to four-word phrases 50 percent of the time (Tr.  164).

Both plaintiff and E.R. testified at the hearing that E.R. played with neighborhood children and with his cousins (see Tr. 264-65, 266-67).  As noted by ALJ Pietz, E.R. was very polite and friendly at the hearing, and was very affectionate toward his mother (Tr. 17). The ALJ further noted that while school records revealed aggressive behavior toward peers and adults, the reports also stated that E.R.'s behavior had improved in the structured school setting (Tr. 17, 253, 255).

This evidence provides ample basis for a reasonable mind to accept ALJ Pietz's finding that E.R. had a less than marked limitation in the domain of interacting and relating with others.  Accordingly, the court cannot disturb this finding.

### C.    Acquiring and Using Information

The domain of acquiring and using information focuses on how well the child acquires, learns, and uses information.  20 C.F.R. § 416.926a(g).  ALJ Pietz found that E.R.'s limitations in this domain were "less than marked," referring to the most recent IQ test scores showing low-average range of intellectual functioning, and Dr. Balderman's report of normal speech and behavior at age three (Tr. 17, 152).  While noting that the record contained evidence of a "marked" impairment in this domain (*see, e.g.*, Tr. 164), the ALJ  discounted this evidence because he found it to be based upon the IQ testing done in 2002, when E.R. was 39 months old, rather than upon the more recent test results from January 2004, "because the claimant was tested at a more mature age [*i.e.*, almost five years old] at which testing is more likely to be accurate" (Tr. 15).[4]

The Social Security regulations provide that since IQ test results generally do not tend to stabilize until the age of 16, the results must be "sufficiently current" for accurate assessment of a child's intellectual functioning.  20 C.F.R. pt. 404, Subpt. P, App. 1, § 112.00(D)(10).

---

[4]The ALJ also ruled out application of Social Security Ruling ("SSR") 98-1, which states that when a child who has a "marked" impairment in cognition also has an impairment that causes a "marked" limitation in speech, the combination of limitations in cognition and speech will be found medically equivalent to Listing 2.09 (Loss of Speech).  *See* SSR 98-1P, 1998 WL 147011 (S.S.A.)).  According to the ALJ, E.R. did not have a "marked" cognitive impairment.

Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior.  IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above.  IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above.

*Id.*  ALJ Pietz's reliance on E.R.'s January 2004 test results as a basis for finding less than marked limitations in this domain is in accord with this provision.

In addition, an occupational therapy evaluation at age 32 months showed that E.R.'s receptive and expressive language skills were "solid" at the 24-month age level, with a strong scattering of skills at the 27-through-30-month age level.  He consistently used two- and three-word phrases and used longer utterances occasionally.  Speech intelligibility was at 60 to 70 percent to the examiner in a known context, while at 50 percent or less to unfamiliar listeners (Tr. 135-37).  The record also reflects that E.R. had benefitted from speech and occupational therapy through early intervention (Tr. 153, 159, 164, 273), and was acquiring "readiness skills,"[5] such as listening to short stories (Tr. 164), performing age-appropriate fine motor activities (Tr. 153), following directions with only some mild repetition (Tr. 157), and using fairly adequate expressive and receptive skills for answering basic questions (Tr. 156).

---

[5]    For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read.  Counting, sorting shapes, and building with blocks are skills needed to learn math.  Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write.  Using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories allows you to acquire and share knowledge and experience of the world around you. All of these are called "readiness skills," and you should have them by the time you begin first grade.

20 C.F.R. § 416.926a(g)(2)(iii).

Based on this evidence, a reasonable mind could find support for the ALJ's conclusion that because E.R. did not have an extreme limitation in any single domain, or marked limitations in any two domains, his impairments were not functionally equivalent to any listed impairment, and he could not be found to be disabled under the Social Security Act.  Accordingly, the ALJ's determination must be affirmed, "even if the evidence would also support a decision for the claimant."  *McKiver*, 2005 WL 2297383, at *10.

## CONCLUSION

Based on the foregoing, the Commissioner's motion for judgment on the pleadings is granted.    The Clerk of the Court is directed to enter judgment in favor of defendant.

In the future, if Ms. McCovery believes that her child, E.R., is entitled to benefits, she may make a new application for such relief.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: August      3      , 2006
p:\opinions\04-658.july2806

-13-